UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WINSTON D. WILLIAMS,<br><br>    Plaintiff,<br><br>        v.<br><br>ERIC K. SHINSEKI,<br><br>    Defendant. | Civil Action No. 10-0070 (CKK) |

MEMORANDUM OPINION
(September 7, 2013)

Plaintiff Winston Williams, proceeding *pro se*, filed suit against Defendant Eric K. Shinseki in his official capacity as the Secretary of the Department of Veterans Affairs, alleging the Defendant failed to select Mr. Williams for an Electrical Engineer position on account of the Plaintiff's national origin and age, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. §§ 621 *et seq*. After the completion of discovery, the Defendant filed a [71] Motion for Summary Judgment. Upon consideration of the pleadings,[1] the relevant legal authorities, and the summary judgment record, the Court finds the Plaintiff failed to produce sufficient evidence from which a reasonable jury could conclude that the Defendant's stated reason for not selecting the Plaintiff was a pretext for discrimination. Accordingly, the Defendant is entitled to summary judgment on the Plaintiff's national origin and age discrimination claims.

---

[1] Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. [71]; Pl.'s Opp'n, ECF Nos. [78, 79]; Def.'s Reply, ECF No. [80].

## I. BACKGROUND

*A.     Plaintiff's Background*

Plaintiff Winston Williams is a sixty-seven year-old American male of Sri Lankan origin. Def.'s Stmt. ¶ 1.[2] Mr. Williams was sixty years-old at the time the events at issue in this case took place. *See id.* Plaintiff graduated from Wayne State University in 1980 with a Bachelor of Science degree in Electrical and Computer Engineering and a grade point average of approximately 2.5. *Id.* ¶ 2. The Plaintiff worked as a designer for Smith and McGrills during summer breaks while he was attending Wayne State University. Williams Dep. 33:12-37:20. The Plaintiff testified at his deposition that he was not employed in the fields of electrical or computer engineering between 1980 and 1984. Def.'s Stmt. ¶ 3. From 1984 through 1988 the Plaintiff was hired as an Electrical Engineer for the General Services Administration. Def.'s Stmt. ¶ 4. In 1988 the Plaintiff resigned his position with the General Services Administration to accept a position as an Electrical Engineer with the Department of Veterans Affairs ("VA"). *Id.* ¶ 5. The Plaintiff remained with the VA until February 2001, at which time he resigned from the VA to accept a position as an Electrical Engineer with the Architect of the Capitol, where he is currently employed. *Id.* ¶¶ 6-7. The Plaintiff obtained a license as a Professional Engineer from the District of Columbia in June 2006. Def.'s Ex. 3 at 8.

---

[2] As indicated in the June 18, 2012, Order, ECF No. [76], the Court strictly adheres to the requirements of Local Civil Rule 7(h)(1). As the Court previously advised the parties the Court may assume facts identified by the Defendant in his statement of material facts are admitted unless such facts are controverted in the Plaintiff's responsive statement. 6/18/2012 Order, ECF No. [76] at 2. Thus, the Court shall cite to the Defendant's Statement of Material Facts as to which There is No Genuine Dispute ("Def.'s Stmt.") unless a statement is contradicted with evidence, in which case the Court may cite to the Plaintiff's Response ("Pl.'s Resp. Stmt.") or directly to the record, as appropriate.

### B.     *Vacancy at Issue*

In February or March 2007, the Plaintiff learned from several individuals at the VA that a vacancy announcement for an Electrical Engineer position at the VA was going to be posted. Def.'s Ex. 1 (Dep. of W. Williams) at 89:16-91:8.  As a result, the Plaintiff sent his resume to Sat Gupta, the Plaintiff's former colleague[3] from the VA, and asked Mr. Gupta to contact the Plaintiff if any relevant positions became available.  *Id.* at 95:11-96:17.  The VA subsequently posted a vacancy announcement for an Electrical Engineer, grade GS-850-14, and advertised the position nationwide for candidates outside the VA.  Def.'s Ex. 3 (Vacancy Announcement); Def.'s Stmt. ¶ 12.  The announcement indicated that a degree in Engineering was required for the position.  The knowledge, skills, and abilities, or "KSAs" for the position included

- Skill in application of advisory and consultative services sufficient to review proposed design and to troubleshoot unique and complex problems with existing electrical systems within medical care environments (design development).  Describe types of medical facilities studied/scope and breadth to include environmental safety/energy usage and life cycle analysis;

- Knowledge in electrical systems for medical care facility design and encountered during on-site construction. Advisory and consultative services included recommended solutions on unique issues applicable to medical care environments (problem resolution).  Describe design related troubleshooting as [sic] problems encountered during construction;

- Knowledge of national codes in safety requirements (Knowledge of varying design standards, criteria, and safety requirements);

- Ability to develop or review design standards, criteria, and specifications written for private consultants or architectural and engineering (A/E) firms; and

- Skill in the ability to establish and maintain effective interpersonal relationships and to communicate effectively with diverse groups with varying interests.

Def.'s Stmt. ¶ 14; Def.'s Ex. 3 at 4-5.  The Plaintiff applied for the position on March 29, 2007.

---

[3] Mr. Gupta worked in a different division of the VA, but worked on the same floor as the Plaintiff for approximately 13 years, and the Plaintiff considered Mr. Gupta a friend. Williams Dep. 86:1-89:9.

Def.'s Ex. 4 (Pl.'s Appl.).

After the announcement closed, the VA compiled a list of minimally qualified applicants, which was transmitted to Sat Gupta, the Chief Selection Panel Official, to determine the best qualified candidates. Def.'s Ex. 13; Def.'s Stmt. ¶ 15. The panel that interviewed the individual ultimately selected for the Electrical Engineer position consisted of three Senior Electrical Engineers with the Consulting Support Services Division of the VA: Sat Gupta (Chief of the Consulting Support Services Division), Khim Chudasama, and Larry Lau. Def.'s Stmt. ¶ 16. Mr. Gupta is an Asian male of Indian origin, who was sixty-seven years old at the time of the selection process. Def.'s Ex. 5 (EEO Investig. Report) at 2. Mr. Chudasama is an Asian male who was sixty-five years-old at the time of the selection process. *Id.* Mr. Lau is an Asian male who was forty-six years-old at the time of the selection process. *Id.* Mr. Chudasama was not aware of the Plaintiff's age at the time of selection, and Mr. Lau was not aware of the Plaintiff's age or national origin until the investigation into the Plaintiff's discrimination complaint. Def.'s Ex. 5 at 2.

Five individuals—Lam Vu, Prem Garg, Robert Isiminger, Kajimel Raisuddin, and the Plaintiff—applied for the position through the merit promotion process. Pl.'s Ex. 7 at 5-6 (Merit Promotion Certificate & Attach.). Of these five applicants, Mr. Vu, Mr. Garg, Mr. Isiminger, and the Plaintiff were found to be "best qualified" applicants. *Id.* at 4-6. The Rating and Ranking List of candidates indicated that the Plaintiff did not address the KSAs in his application. *Id.* at 6. Nor did the Plaintiff indicate in his application that he received any performance awards or otherwise discuss his performance ratings during his time at the VA. *See generally* Def.'s Ex. 4. Mr. Gupta elected not to select any of the individuals that applied through the merit promotion process. Pl.'s Ex. 7 at 5-6; Def.'s Ex. 6 at 2.

4

Separate and apart from the merit promotion process, the Office of Personnel Management provided the VA with a "Certificate of Eligibles" identifying three candidates for the Electrical Engineer position: Dat Tran, Sunil Khatri, and the Plaintiff. Pl.;s Ex. 7 at 8. The selection committee only interviewed Dat Tran, and ultimately selected Mr. Tran for the position. Def.'s Stmt. ¶ 22. Mr. Gupta explained that the Plaintiff and Mr. Khatri "were not interviewed because [Gupta] knew them, their capabilities and their ability to perform and express technical knowledge during meetings." Def.'s Ex. 10 (Gupta Aff.) at 3. Mr. Tran is an Asian male, who at the time of his selection was forty-seven years old. *Id.*; Def.'s Ex. 5 (EEO Report) at 7.

  C. *Dat Tran's Background & Qualifications*

Beginning in October 1983, Dat Tran was employed as a Designer with Glassman & Lereches and Associates, and was later promoted to the position of Junior Engineer. Def.'s Ex. 14 (Tran Resume) at 2. Mr. Tran took a position as a Junior Engineer with Cad Con, Inc., Consulting Engineers in January 1987. *Id.* Mr. Tran was subsequently promoted to Senior Engineer. *Id.* In October 1990, Mr. Tran joined Einhorn Yaffee Prescott, Architectural & Engineering, PC ("EYP"). *Id.* at 1. Mr. Tran received an Associate's Degree in Electrical/Mechanical Engineering in 1992 from Northern Virginia Community College. Def.'s *Id.* at 2. Mr. Tran remained with EYP until February 1998, serving as a Senior Associate and a Senior Project Electrical Engineer. *Id.* at 1. He graduated from Old Dominion University with a Bachelor of Science Degree in Electrical Engineering & Technology in December 1998. *Id.* at 2. From February 1998 until his selection for the vacancy with the VA in 2007, Mr. Tran was employed as a Senior Electrical Engineer with various architectural and engineering firms in the Washington, D.C. metropolitan area, including EYP. *Id.* at 1-2. Mr. Tran received a license as a

Professional Engineer from the District of Columbia in 1996, from the state of Maryland in 2000, and from the state of Virginia in 2005.  *Id.*

    *D.*    *Litigation History*

Mr. Gupta's selection of Mr. Tran for the Electrical Engineer vacancy was approved on May 3, 2007.  Def.'s Ex. 11 (Selection Approval).  The Plaintiff reportedly learned he was not selected for the position on June, 27, 2007, and submitted a discrimination complaint to the VA on July 31, 2007.  Def.'s Ex. 16 (Pl.'s EEO Compl.); Def.'s Ex. 18 (EEO Decision) at 1.  Following an investigation, an Equal Employment Opportunity Commission ("EEOC") Administrative Judge granted summary judgment in favor of the VA, finding that the agency articulated a legitimate, non-discriminatory reason for not selecting the Plaintiff, and the Plaintiff failed to show the agency's stated rationale was a pretext for discrimination.  Def.'s Ex. 18 at 1.  The EEOC affirmed the Administrative Judge's ruling on appeal.  *Id.* at 3.  The Plaintiff subsequently filed suit.  Following the close of discovery, the Defendant filed the present motion for summary judgment, which is now ripe for consideration by the Court.

## II.  LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials); or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). When considering a motion for summary judgment, the court may not make credibility determinations or weigh the evidence; the evidence must be analyzed in the light most favorable to the nonmoving party, with all justifiable inferences drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "If material facts are at issue, or, though undisputed, are susceptible to divergent inferences, summary judgment is not available." *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009) (citation omitted).

The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The mere existence of a factual dispute, by itself, is insufficient to bar summary judgment. *See Liberty Lobby*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* For a dispute about a material fact to be "genuine," there must be sufficient admissible evidence that a reasonable trier of fact could find for the nonmoving party. *Id.* The adverse party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute. *See Ass'n of Flight Attendants–CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 465–66 (D.C. Cir. 2009).

### III.  DISCUSSION

*A.*     *Preliminary Issues*

Before reaching the merits of the Defendant's argument, the Court pauses briefly to address two evidentiary issues raised by the Plaintiff.  First, the Plaintiff argues the Court should preclude the Defendant from relying on affidavits submitted by Mr. Gupta and other members of the selection committee during the EEO investigation on the grounds the affidavits "are not admissible evidence before a reasonable jury" insofar as the statements are hearsay.[4]  Pl.'s Opp'n at 2-3 & n.3.  "At the summary judgment stage [Defendant] is not required to 'produce evidence in a form that would be admissible at trial.'"  *Galvin v. Eli Lilly & Co.*, 488 F.3d 1026, 1037 (D.C. Cir. 2007) (quoting *Celotex Corp.*, 477 U.S. at 324).  Federal Rule of Civil Procedure 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence," but that is not the case here.  All of the statements the Plaintiff takes issue with on page 2 of his opposition would likely be admissible at trial if the Defendant simply called the members of the selection committee to testify.  This is not to say that no other evidentiary objections might exist to this testimony.  Rather, the Plaintiff's hearsay objection is misplaced at this stage of the proceedings because the testimony at issue would not be hearsay if presented by the relevant witnesses on the stand during trial.

Second, the Plaintiff takes issue with the fact the Defendant objected to a number of the Plaintiff's discovery requests, but now emphasizes the fact that the Plaintiff lacks evidence regarding certain issues relevant to his claims.  Pl.'s Opp'n at 2-4.  The Plaintiff had a full and

---

[4] Curiously, elsewhere in his Opposition the Plaintiff argues that the Court *should* rely on the affidavits and other documents from Mr. Gupta, noting "[w]hat else is better evidence than the individual's own words committed in writing?"  Pl.'s Opp'n at 6.

fair opportunity to take discovery from the Defendant in this matter, and served 45 requests for production of documents. Pl.'s Ex. 19 (Pl.'s Reqs. for Production). The Plaintiff subsequently filed a motion to compel further responses from the Defendant. Pl.'s Mot. to Compel, ECF No. [36]. The Court referred the matter to Magistrate Judge Alan Kay for resolution. 12/12/11 Order, ECF No. [39]. After the motion was fully briefed—including after the Plaintiff filed a 213 page Supplemental Reply—Magistrate Judge Kay held a hearing to discuss the Plaintiff's motion. 3/13/12 Mem. Order, ECF No. [50], at 1-2. Magistrate Judge Kay's Memorandum Order discussed in detail each of the requests identified in the Plaintiff's motion, and ordered the Defendant to provide "information regarding complaints against Mr. Gupta (which did or did not lead to a reprimand or demotion) relating to his actions in connection with the selection process for the Electrical Engineer position." *Id.* at 5. Magistrate Judge Kay specifically addressed the primary area of discovery the Plaintiff discusses in his Opposition,[5] information regarding other VA employees that did not apply for the vacancy at issue, and found that the Plaintiff failed demonstrate how this information was relevant to his claim of discrimination. *Id.* at 4. The Defendant was entitled to raise any good-faith objection to the Plaintiff's discovery requests, and the Plaintiff had the opportunity to challenge the Defendant's answers before Magistrate Judge Kay. The fact that the Defendant lodged valid objections to the Plaintiff's discovery requests does not excuse the Plaintiff from meeting his burden to produce sufficient evidence to demonstrate a genuine issue of material fact regarding his discrimination claims.

    B.    *Plaintiff's Claims*

In Title VII and ADEA cases, courts traditionally follow the *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), burden-shifting framework. *Evans v. Sebelius*, 716 F.3d 617, 620

---

[5] *See* Pl.'s Opp'n at 41-42.

(D.C. Cir. 2013); *Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013) ("We consider [Plaintiff's] age . . . discrimination claim[] in the same way we analyze Title VII claims."). Where, as here, the Defendant has proffered a legitimate, non-discriminatory explanation for its selection decision—namely, that Dat Tran was more qualified than the Plaintiff—"the *McDonnell Douglas* inquiry distills to one question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race . . . ?" *Evans*, 716 F.3d at 620. As part of this inquiry, the Court examines whether "there is evidence from which a reasonable jury could find that the employer's stated reason for the firing is pretext and any other evidence that unlawful discrimination was at work." *Barnett*, 715 F.3d at 358.

Though somewhat unclear, the Plaintiff appears to suggest three categories of evidence demonstrate the Defendant's stated reason for not selecting the Plaintiff was a pretext for discrimination: (1) procedural irregularities in the selection process; (2) the selection official's past practice of hiring other individuals that share his national origin regardless of their qualifications; and (3) the Plaintiff's qualifications compared to Mr. Tran. The Court addresses each argument in turn.

        1.    <u>The Plaintiff Failed to Identify Any Procedural Irregularities in the Selection Process</u>

Initially, the Plaintiff takes issue with several purported "irregularities" in the selection process, none of which have merit. The Plaintiff emphasizes that he was not interviewed for the position, but the Plaintiff does not cite to any VA regulation or other legal authority that requires the selecting official to interview all candidates on the Certificate of Eligibles, or that doing so is normal practice within the VA. Moreover, it is not as if the Plaintiff was the only candidate on

the Certificate that did not receive an interview: Mr. Gupta also declined to interview Sunil Khatri.  The Plaintiff also argues the selection process was flawed because Mr. Tran was not on the "best qualified list."  Federal regulations provide that a selecting official has the right "to select o*r not select* from among a group of best qualified candidates."  5 C.F.R. § 335.103(b)(4) (emphasis added).  Selecting officials are also allowed to fill vacancies "from other appropriate sources, such as reemployment priority lists, reinstatement, transfer, handicapped, or Veteran Recruitment Act eligibles or those within reach on an appropriate OPM certificate."  *Id.*  In other words, selecting officials like Mr. Gupta are not required to select an individual from the list of best qualified candidates generated from those that apply through the merit promotion process.  As in this case, candidates may be referred for a position from other sources, including a Certificate of Eligibles.  Mr. Gupta was permitted to select an individual, like Mr. Tran, from the Certificate of Eligibles, even though Mr. Tran did not apply through the merit promotion process, and thus did not appear on the best qualified list.  Finally, the Plaintiff notes that on the selection form Mr. Gupta stated that he had "interviewed several candidates," which is incorrect.  Def.'s Ex. 11.  No reasonable jury could conclude the Defendant's stated reason for selecting Mr. Tran was pretext based on this misstatement, particularly in light of the fact the record contains no other evidence to suggest pretext.

    2. <u>Mr. Gupta's Decisions Regarding Other Vacancies Do Not Evidence Pretext in this Case</u>

Throughout his pleadings, the Plaintiff suggests that between 2001 and 2007, Mr. Gupta hired a number of individuals of Indian and Vietnamese national origin without announcing the vacancies, or verifying that the individuals possessed the skills, professional licenses, or certifications the Plaintiff lacks.  Pl.'s Resp. Stmt. ¶ 11.  Setting aside the fact the Plaintiff offers zero evidence to support this assertion, it is entirely unclear why the Plaintiff believes the

selection of these individuals is relevant to this case. The Plaintiff does not suggest he would have applied for any of the positions if the vacancies had been announced, and with the exception of Mr. Chudasama and Manu Thuhai (a mechanical engineer), the Plaintiff does not identify what the respective positions of the individuals in question. Nor does the Plaintiff explain why the KSAs and certifications at issue in this case would be relevant to Mr. Thuhai's position as a mechanical engineer. With no evidence and no articulable relevance, no jury could conclude from this argument that the agency's stated reason for not selecting the Plaintiff was a pretext for discrimination.

       3.      <u>The Plaintiff Was Not Significantly More Qualified than the Selected Individual</u>

"[W]hen an employer says it made a hiring or promotion decision based on the relative qualifications of the candidates, a plaintiff can directly challenge that qualifications-based explanation only if the plaintiff was '*significantly* better qualified for the job'" that the individual ultimately selected for the position. *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1227 (D.C. Cir. 2008) (quoting *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006)). The United States Court of Appeals for the D.C. Circuit explained:

> The gap in qualifications must be great enough to be inherently indicative of discrimination. Only then could the fact-finder legitimately infer that the employer consciously selected a less-qualified candidate-something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture. In cases where the comparative qualifications are close, a reasonable jury would not usually find discrimination because the jury would assume that the employer is more capable of assessing the significance of small differences in the qualifications of the candidates, or that the employer simply made a judgment call.

*Id.* (citations omitted). The Court must "respect the employer's unfettered discretion to choose among qualified candidates," *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996), and "must not act as a super-personnel department that reexamines an entity's business

decisions," *Barnett*, 715 F.3d at 359 (citation omitted).

The Plaintiff argues that Mr. Gupta and the other members of the selection committee "lied" about a number of Dat Tran's qualifications. First, the Plaintiff argues Mr. Tran had only 8 years of design and engineering experience, rather than the twenty-plus years cited by the Defendant. Pl.'s Opp'n at 11. The Plaintiff's calculation discounts the fifteen years Mr. Tran spent as designer and engineer prior to receiving his degree, but the Plaintiff offers no explanation as to why this experience should be ignored such that Mr. Gupta's statement could be considered false. Second, the Plaintiff argues that Mr. Gupta and other members of the selection committee lied about Mr. Tran's educational background by stating that Mr. Tran had a degree in electrical engineering. The Plaintiff suggests that Mr. Tran's degree in electrical engineering *technology* is not equivalent to a degree in electrical *engineering*, but offers no evidence to support this assertion. Moreover, the fact that the Office of Personnel Management identified Mr. Tran as eligible for the vacancy would suggest Mr. Tran's degree was sufficient. *See supra*, Section III.B (discussing the selection process and certificate of eligible). Third, the Plaintiff argues the selection committee members falsely stated that Mr. Tran was licensed as a Professional Engineer in the District of Columbia, Maryland, and Virginia at the time of selection. Pl.'s Opp'n at 9. Mr. Tran's resume indicated that at the time he was licensed in all three states, and provided the years in which he first obtained the licenses. Def.'s Ex. 14 at 1. The Plaintiff points to his own Exhibit 14, which includes the initial license certificates Mr. Tran received from the District of Columbia and state of Maryland. Nothing in Plaintiff's Exhibit 14 (or anything else in the record), calls into question the representation in Mr. Tran's resume. On this record, no reasonable jury could conclude Mr. Gupta or any other member of the selection committee falsely represented Mr. Tran's qualifications.

Throughout his opposition brief, the Plaintiff argues that the selection committee also lied about the Plaintiff's qualifications, though he does not identify any specific inaccuracies. *E.g.*, Pl.'s Opp'n at 6, 10, 15. The Plaintiff refers to his own Exhibit 5, which contains a number of the Plaintiff's performance appraisals and awards during his time with the VA. But the Plaintiff's application for the vacancy at issue did not attach any of these documents, nor did the Plaintiff indicate in his application that he received any awards or discuss his performance ratings while at the VA. *See* Def.'s Ex. 4. "[T]he record reveals no actual evidence [Mr. Gupta] misstated [Plaintiff's] qualifications as []he understood them at the time of [his] hiring decision," and thus does not support the inference that Mr. Gupta's stated reason for selecting Dat Tran was a pretext for discrimination. *Holcomb*, 433 F.3d at 898.

A comparison of the Plaintiff's qualifications to Mr. Tran's demonstrates the Plaintiff was not significantly more qualified for the Electrical Engineer position than Mr. Tran. The Plaintiff received his bachelor's degree in 1980 with a grade point average of approximately 2.5; Mr. Tran received his bachelor's degree in 1998 with a grade point average of 3.63. At the time of selection, the Plaintiff had been working as an Electrical Engineer since 1984; Mr. Tran had been working as a Designer, Electrical Engineer, and Senior Electrical Engineer since 1983. With the exception of a summer internship, Plaintiff's work experience has been exclusively in the public sector. By contrast, Mr. Tran worked over twenty years for private architectural and engineering firms, which is directly relevant to the KSA concerning the applicant's "[a]bility to develop or review design standards, criteria, and specifications written for private consultants or architectural and engineering (A/E) firms." Def.'s Ex. 3 at 5.

The Plaintiff was first licensed as a Professional Engineer by the District of Columbia in 2006; Mr. Tran has been licensed in the District of Columbia since 1996, and was also licensed

in Virginia and Maryland at the time he applied for the vacancy at issue. The Plaintiff argues that "some people take [sic] the Professional Engineering License right after college just to land in a job. Where are [sic] people like [Plaintiff] after 25+ years of working experience take the [c]ertification to start up [their] own [e]ngineering [c]onsulting [b]usiness." Pl.'s Resp. Stmt. ¶ 26. However, the Plaintiff does not dispute Mr. Gupta's representation that under state law, work performed by a non-licensed engineer must be supervised by a licensed Professional Engineer, thus the fact that Mr. Tran has been licensed since 1996 indicates "he has more completely developed his command of the discipline, which establishes him as a [sic] more independent and less in need of supervision." Def.'s Ex. 10 (Gupta Aff.) ¶ 19. Both the Plaintiff and Mr. Tran are members of the Institute of Electrical and Electronics Engineers, but Mr. Tran is also an International Building Codes ("IBC") Certified Electrical Plan Examiner, an IBC Certified Commercial Energy Inspector, a Certified Communication Distribution Designer, a Construction Document Technologist, and a member of the International Telecommunication Industrials Society. Mr. Tran's resume further indicated that he had working knowledge of the National Electrical Code, National Fire Protection Code, International Engineering Society International Building Code, National Institute of Standards, the Americans with Disabilities Act, and Means Cost Estimates.[6] Mr. Tran's additional certifications and areas of knowledge are directly relevant to the KSA regarding "[k]nowledge of national codes in safety requirements ([k]nowledge of varying design standards, criteria, and safety requirements." *Id.*; *see also* Def.'s Ex. 6 at 2; Def.'s Ex. 9 (Chudasama Aff.) at 4. The Plaintiff disputes the significance of Mr. Tran's certifications and knowledge of various codes, suggesting that "[t]his [i]tem is a subject for [c]larification by an [o]ut[]side[] neutral Professional Electrical Engineer." Pl.'s Resp. Stmt.

---

[6] *See* Def.'s Stmt. ¶ 28 (explaining the abbreviations used in Mr. Tran's resume).

¶¶ 27-28. The Plaintiff cannot rely on his own, unverified assertions to oppose the Defendant's motion; the suggestion that expert testimony might refute the Defendant's argument, without any evidence from a purported expert, is insufficient to create a genuine dispute.

The affidavits submitted by the interview panel detail a number of qualitative skill areas in which Dat Tran outperforms the Plaintiff, three of which appear to have been particularly important. First, the interview panel members emphasized the need for the selectee to have design experience involving mission critical and medical facilities after September 11, 2001 and Hurricane Katrina. Mr. Lau explained that "the nation's medical communities have adopted many design changes after [September 11 and Hurricane Katrina]." Def.'s Ex. 8 ¶ 26. The Plaintiff notes that he performed work in connection with four large scale hospital projects while working at the VA, Pl.'s Resp. Stmt. ¶ 34, but he does not dispute that he has not been involved with any medical center-related projects since leaving the VA, making his experience largely irrelevant. *Id.* During his deposition, the Plaintiff specifically testified that he had never designed a medical facility. Williams Dep. 63:18-20. Mr. Chudasama further indicated that the Plaintiff lacked experience with code compliance in emergency situations. Def.'s Ex. 9 ¶ 26. By contrast, Mr. Tran's experience since 2004 has included designing various systems for "large scale facilities including medical hospitals." Def.'s Ex. 14 at 1; *see also id.* at 2 (indicating Mr. Tran was the lead project engineer directly responsible for designing systems for "various types of buildings such as government facilities, educational buildings, [and] hospitals").[7]

---

[7] The Plaintiff suggests that Mr. Tran worked on a single project involving a medical facility, referring to Plaintiff's Exhibit 13. Pl.'s Resp. Stmt. ¶ 32. Plaintiff's Exhibit 13 includes a document entitled "Questions used during the interview with Dat Tran," but the Plaintiff offers no further information regarding the document. Pl.'s Ex. 13 at 3. In response to a question asking Mr. Tran to given an example "of one of the major projects which [he] managed the complete design," Mr. Tran reportedly explained that he was in charge of the Saint Elizabeth

Second, the members of the interview panel highlighted the need for the selectee to have management and supervision experience. The Plaintiff did not indicate in his application that he had any supervisory experience. *See generally* Def.'s Ex. 4. Mr. Tran served as a team and department leader in the private sector, and supervised a staff of ten electrical engineers, including two Professional Engineers. Def.'s Ex. 9 ¶ 20; Def.'s Ex. 10 ¶ 19.

Third, the interview panel emphasized that the selectee needed to be able to effectively represent the Consulting Support Services Division to its clients and design consultants. Mr. Gupta explained

> In CSS, one of the key tasks is the review of all major projects that cost over 10 Million dollars to almost a billion dollar each project. These projects are designed by the leading professionals in the country. The CSS staff must have the academic and professional standing to provide constructive and sometimes adversarial guidance to these design professionals. It is imperative that CSS be staffed by people who possess both technical knowledge and the ability to communicate, and sometimes to impose that knowledge in high pressure situations. CSS staff meets and interact extensively with their counterparts in large meetings and in small, therefore, should be well versed in technical and be able to talk and guide the consultants in the right direction.

Def.'s Ex. 10 ¶ 16(3); *see also* Def.'s Ex. 9 ¶ 26 ("The senior Electrical Engineer position in CSS requires dealing with contractors and experts in difficult areas of code compliance in emergency situations which the [Plaintiff] lacks."). Mr. Chudasama, who worked with the Plaintiff during the Plaintiff's time at the VA,[8] described the Plaintiff as "non-assertive," and indicated the Plaintiff "lacks experience as an electrical expert." Def.'s Ex. 9 ¶ 26. Mr. Gupta indicated the Plaintiff "has a difficult time explaining and defending technical issues with senior managers and other professionals." Def.'s Ex. 10 ¶ 20. The Plaintiff offers no evidence to the contrary.

---

Hospital Project in Washington, D.C. *Id*.

[8] Pl.'s Opp'n at 14 (describing Mr. Chudasama as "a former [c]o-worker of mine at VA and also an Electrical Engineer like me").

The Plaintiff does not dispute the significance of the three key qualitative skills identified by the interview panel, nor does the Plaintiff offer any evidence from which a reasonable jury could conclude (1) that Plaintiff was significantly more experienced in designing medical facilities since 2001 than Mr. Tran; (2) that Plaintiff's leadership and management skills were significantly better than Mr. Tran's; and/or (3) that the Plaintiff was significantly more qualified than Mr. Tran to represent the Defendant's interests to clients and consultants.  Moreover, the Plaintiff offers no evidence to support his contentions that Mr. Tran did not have certain licenses or certification, or that the certifications and code-related experience Mr. Tran possessed but the Plaintiff lacked are insignificant.  Viewing the evidence in the light most favorable to the Plaintiff, no reasonable jury could conclude from this record that the Plaintiff was "significantly better qualified" than Dat Tran.  Even if the Plaintiff was equally qualified for the position, the Plaintiff "was simply not discernibly better" than the selected individual.  *Stewart v. Ashcroft*, 352 F.3d 422, 429 (D.C. Cir. 2003).  "This Court will not reexamine governmental [selection] decisions where it appears the Government was faced with a difficult decision between two qualified candidates, particularly when there is no other evidence that race played a part in the decision."  *Id.* at 430.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds the Plaintiff failed to produce sufficient evidence from which a reasonable jury could conclude that the Defendant's stated reason for not selecting the Plaintiff for the Electrical Engineer vacancy was a pretext for discrimination based on the Plaintiff's national origin or age.  The selecting official was not obligated to interview the Plaintiff or limit his selection to the individuals on the best qualified list.  The Plaintiff fails to offer any evidence that the selecting official previously hired unqualified individuals of Indian

and Vietnamese national origin, and the Plaintiff offers no clear explanation as to why such evidence would be relevant if it existed.  Ultimately, the Plaintiff failed to demonstrate that he was more qualified---much less *significantly more* qualified---than the individual selected for the position.  Viewing the evidence in the light most favorable to the Plaintiff, no reasonable jury could conclude the Defendant's legitimate, non-discriminatory explanation for the Plaintiff's non-selection is pretext.  Accordingly, the Defendant's [71] Motion for Summary Judgment is GRANTED.  An appropriate Order accompanies this Memorandum Opinion.

                                                                     */s/*
                                                    **COLLEEN KOLLAR-KOTELLY**
                                                   UNITED STATES DISTRICT JUDGE